3-15-0615 People of the State of Illinois, Appleby v. Robert Gromm, Appellant v. Mark Fisher Before you begin, as you can tell, Justice McBade physically is not here today. She has been unavoidably detained and not able to be here. But she has provided the briefs, she has been working on them prior to today, and she will listen to the tapes and fully participate in the decision that's made. And with that, Mr. Fisher, thank you for being here early, too. Thank you. You're welcome. Good morning, Your Honors, and may it please the Court and Counsel, representing the defendant in this case, Robert Gromm. Mr. Gromm represented himself and was convicted in a jury trial of three Class A misdemeanors, domestic battery and two counts of resisting or obstructing police. Specifically, the jury found that on March 20, 2015, the defendant slapped the face of his girlfriend's teenage daughter with whom he shared a residence and also resisted police officers' attempts to handcuff him when they attempted to arrest him for domestic battery. He received a sentence of 300 days in the county jail. Five issues are raised on appeal. The first issue, the defendant maintains he was not proved guilty beyond a reasonable doubt of domestic battery because the evidence established that his slapping his girlfriend's daughter was an exercise of reasonable parental discipline. Therefore, I ask this Court in Issue 1 to reverse the domestic battery conviction outright. Alternatively, in Issues 2 through 4, he respectfully requests a new trial. He does so in Issue 2 because although he presented the defense of parental discipline, the jury was never instructed on that defense and the prosecutor misstated the law of parental discipline to the jury. He also seeks a new trial in Issue 3 based on the introduction of highly prejudicial and completely irrelevant evidence for which the state failed to lay a proper foundation. And he seeks a new trial in Issue 4 because one of the jurors was not fair and impartial. As a final alternative in Issue 5 on one Act, one crime grounds, he asks this Court to reverse or vacate one of the two convictions of resisting or obstructing. In argument today, I'd like to focus on the new trial issues, Issues 2, 3, and 4. Of course, if your honors have questions about the other issues, I'd be happy to address those as well. The elements of domestic battery are that the defendant caused bodily harm to a person with whom he shares a household or residence. Those elements were easily proved in this case. The evidence showed that on the day in question, the defendant shared a residence with his girlfriend and her children, that he became involved in an argument with one of those children, a teenage girl. He, based on statements, according to the testimony, he believed she was mouthing off or being insolent. He responded by slapping her. So the elements of the offense of domestic battery were easily proved, and the jury was instructive as to those elements. The defendant, however, presented a defense here of reasonable discipline. He elicited testimony from his girlfriend that he had known her children for most of their lives, and that he had permission from his girlfriend to discipline or punish the child, including the use of corporal punishment. And, in fact, he told the jury in closing argument that that's what he had done, that he hadn't battered or abused the child, had simply disciplined her. The problem is the jury never received instructions as to the defense of parental discipline. And so because the elements of domestic battery were proved, the jury had no option here but to find the defendant guilty. In addition, even without instructions, even if there was a possibility that the jury might think, well, this is discipline, it's not battery, it's not a crime, the prosecutor told the jury that the defendant had no right to discipline this child because he was not the child's parent. That is a misstatement of the law. Illinois law recognizes that an individual, even a non-parent, may be able to use corporate punishment as long as it is reasonable. As long as the individual stands in loco parentis to the child. This can include a teacher. It can also include a non-parent, like Mr. Grom, who lives with the child and who has permission from the mother to exercise discipline. Now, as I mentioned earlier, the defendant represented himself in this case. He was pro se. He did not object to the prosecutor's statements, nor did he tender an instruction as to reasonable parental discipline. So technically the issue has been weighed. The defendant would ask this court to consider the fact that during the jury instructions conference, the judge told the defendant that because he was proceeding pro se and she realized he was not a lawyer, she would help him out with the jury instructions. And she said, after all, the instructions come from the judge, which of course is true. She also told him that it's up to the state's attorney to tender the instructions. The entire jury instructions conference here consisted of a review of the instructions tendered by the prosecution. And the prosecutor did not tender any instructions as to the defense of parental discipline. Furthermore, the judge didn't ask defendant if he wanted the jury to be instructed on that defense. She didn't even ask the defendant if he had any instructions to tender. Or, gee, you know, do you want to look at the IPI, see if anything there might be applicable to this case. Under these circumstances, the defendant would submit that he was misled, and this court could well find that the issue was not weighed for that reason. Alternatively, of course, he asked this court to find plain error and submits. Then in a case like this, where he had a plausible defense, he attempted to submit it, but the jury wasn't instructed and therefore had no option but to convict, that this is a case where the plain error doctrine should apply. And he therefore asked this court for a new trial on that basis. I have a question about whether or not this is truly an affirmative defense or whether it's an element. Because in the domestic, in the statute, 3B15-112A3B1, it says that abuse does not include reasonable direction of a minor child by a parent. Do you think that that is the state's burden to prove that this was not the reasonable direction of a child? Or does it fit into the, you know, an affirmative defense that has to be raised by the defense? I've struggled a little bit with this, and I really don't know. I mean, if that goes more towards issue one or in this issue, and again, it might have been something that had been dealt with had he not appeared pro se. Right. But in terms of your argument, do you think it makes a difference how we treat this? Your Honor raises an interesting point. I mean, I haven't, of course, I haven't made that specific argument in the briefs. I certainly, I mean, there could be a case where the defense is I didn't do it, nothing happened, there was no contact, or it was accidental. So it strikes me as being more of an affirmative defense to be raised by the defendant. Of course, once it is raised, then it would have to be disproved by the prosecution. Of course, if Your Honor disagrees with me and feels that that was part of the state's burden regardless of the defense presented by the defendant, then certainly the defendant would certainly accept Your Honor's judgment in that regard. Certainly, in thinking about this case, when I read the record and prepared the briefs, my thought was this was an affirmative defense. As I said, if Your Honor feels otherwise, then certainly the defendant would accept that as well. The defendant also maintains that he was denied a fair trial because during trial, the state elicited testimony from one of the police officers who responded to the scene that somewhere at the police station there was posted information allegedly found on the defendant's Facebook page talking about an incident in New York in which some police officers had been shot and killed and allegedly bemoaning the fact that even more officers had not been killed in that incident. The defendant submits that this evidence was incredibly prejudicial, incredibly inflammatory, would be likely to alienate the jury against the defendant and run the risk of the jury simply convicting him based on these abhorrent views without regard to the evidence, the other evidence presented at trial. In addition, it was irrelevant to whether or not he committed domestic battery and irrelevant to whether or not he committed the resisting or obstructing offenses. In addition to that, the defendant submits that even if it was somehow admissible, the state needed to lay a foundation which it did not lay in this case. We have no testimony anywhere at trial from any individual saying, oh, I looked up the defendant's Facebook page and actually saw this information there. The only testimony at trial is that this information appeared on some board posted at the police station allegedly taken from the defendant's Facebook page. In addition to that, and I'm not an expert on this by any means, but I'm told that if person A has a Facebook page and if that individual friends person B, the possibility exists that person B can then post something on person A's Facebook page. Now, maybe it can be deleted. Again, I don't know. But here, even if this information did come from the Facebook page, there's no certainty that it was actually posted by the defendant as opposed to some third person. Now, unfortunately, the pro se defendant did not object. And so the defendant must pass this court to find plain error. And I think as the gatekeeper of the evidence, the judge who responded could have just simply stricken it. But in any event, given the high degree of prejudice, given the lack of relevance and the lack of proof actually showing that this really was the defendant who posted this, this just carried too much of a risk to deny the defendant a fair trial, in a case in which I think the evidence was somewhat close. And so the defendant, for this reason, also asked Your Honors to grant him a new trial. And finally, he seeks a new trial because one of the people who ended up on the jury in this case told the judge, during Vardir, that she was friends with LaSalle County State's Attorney Brian Towne. This was a LaSalle County prosecution. She said to the judge that for that reason she could not vote against the prosecution. Clearly, she should have been excused for cause. She was not. She ended up on the jury. A pro se defendant, I acknowledge full well to Your Honors, did not use a preliminary. He had preliminaries to use, did not use a preliminary, did not ask that she be excused for cause. I would note that somewhat similar to the jury instructions conference, just prior to Vardir, the judge again said, because you're pro se, I'm going to help you out here. You're going to see that I excuse a lot of people for cause. And she did. To her credit, she did. I'm paraphrasing here, but I think she also said something about, by the time somebody is presented to you to be questioned, to her in Vardir, I would ascertain that they are not prejudiced. The problem is this individual never retracted the statement. Now, the judge did say to her that you understand you couldn't be a good juror if you based a verdict on your relationship with the state's attorney as opposed to the evidence in the case. And she said, yes, I understand, but all she was saying is she understood she couldn't be a good juror. She never retracted her statement. She never said she could be fair and impartial. Therefore, the defendant submits this violated his fundamental constitutional right to be tried by a fair and impartial jury. And because he wasn't, this should also be found to be plain error. For these reasons, as well as those set forth in Issues 2 and 3, collectively or alternatively, Mr. Gron would respectfully ask this Court to remand for a new trial.  Thank you, Your Honor. Mr. Gnodzik. May I please the Court? Counsel. With respect to your question, which does pose a very interesting question concerning permanent offense and who has the burden, my suggestion is, is if Your Honor would like that briefed, since neither party really has addressed it, as just a suggestion, the Lord knows they have enough work, but I'd be more than happy to take you still, nonetheless, You better look at your phallic before you make that offer. He's got plenty of time. But I just throw that out simply because I think it is important enough that I think for an informed decision, I'd be more than happy to take, and counsel would agree, I'd be more than happy to take any kind of a briefing schedule set up to be able to do that in a timely fashion. Although, having said that, when you take a look at who has the burden of raising it, I think that in this case, if we look at what all happened here, in essence, and this all has to be taken somewhat in context because we're dealing with a pro se defendant representing himself. I think the defendant raised the issue himself, even though there was no formal defense counsel in discovery would indicate that they are raising the affirmative defense of reasonable criminal discipline. In this case, regardless of, but I think it's important for the law with respect to, so everybody knows, if the court is going to articulate that, to have a briefing, but I think in this case, the issue I think was actually raised by the defendant, and whether it was the state's burden to first disprove it or to respond and disprove it, I think that when you look at the evidence and what the nature of the case was, I think that that is what the state did by its very evidence and indicating what was done because if the defendant is claiming reasonable criminal discipline, obviously the act itself is what is really going to take and determine whether or not, which side of the line it falls on, domestic battery or reasonable criminal discipline. And so having said that, I think that the court has enough facts to decide the issue, but on the question of law as to who has to either initially raise the disproval or has to raise it as affirmative defense, I think that's important enough that if the court would accept the offer for briefing, I guess I'd be happy to take them and do that. And I think what we'll do is confer with the other panel member, and if we decide that we would like initial or some additional briefing, we'll notify the parties as sometimes we do on these cases and note that you've requested it, and we will go forward with that. But for purposes of today, we want to just go forward with the argument as it's been prepared, but I appreciate that. Thank you. What's been presented here this morning is basically five trial errors. Trial judge failed to instruct on the definition of reasonable criminal discipline. The cross-examination of the defense witness was error. Closing argument, there was error. Error in remission of Facebook and the seating of a juror. The overriding problem that we have here is that all of these issues have been forfeited. Now, as I listened to the argument this morning, an overriding theme that I kept hearing was the trial judge should have done this. The trial judge should have done that. The problem with that is the trial judge is not an attorney on behalf of the defendant. The trial judge does not have a duty to defend the defendant or to make any kind of suggestions as to what or how the defendant should or should not conduct their defense. And so to claim that the trial judge could have sui sponte done this, the trial judge could have sui sponte done that, is forcing the defendant's choice to proceed pro se. And all of the foibles and all of the problems that are associated with not being familiar with how to defend oneself in a courtroom, we can jettison that because we're placing anything on the trial judge. And I think that is an overriding theme that has been presented by the defendant here. But when we look at each individual error claimed, what we have is the fact that the individual claims, because if you look, of course, not objecting, not including issues in a post-trial motion, it's obvious forfeiture. The only way to be able to address those issues substantively is through plain error. And, of course, we all know that the first step in plain error is to find out whether or not there was any error at all. And I submit, as the people have argued in their brief on all five of these, that there's no error to begin with. So, therefore, there can be no plain error in order to go to the next step. When we look at the instruction, the fact of the matter is the jury was fully aware of what the issue was. Was it domestic battery or was it reasonable parental discipline? The lack of a definition of reasonable parental discipline did not deprive the jury of making an intelligent decision as to whether or not what the defendant did fell within that parameter. They had the testimony as to what he did. They had the testimony of the mark left on the victim's face. They had the testimony that the stepbrother is the one who called because he wanted the incident to stop. He didn't want it to go any further. I mean, it expresses his fear of what was going on. We all know the reason why the defendant struck. So, basically, what we have is the jury had all of the components necessary. And, I guess, much like reasonable doubt, we don't define reasonable doubt. Now, mind you, I do know there is a non-IPI instructions in this case that define what reasonable parental discipline is. But, without that, the jury in common sense, I think, can apply and can decide whether or not the actions of the defendant at that time, whether or not that action was or was not reasonable parental discipline. And, for the defendant to ask this court to create an exception for that, I think, goes beyond what this court is able to do. The whole thing is the trial judge had no duty to instruct. The thing about the fact of helping, the trial judge did help. The trial judge asked on this instruction, do you want to object or not? And, on other instructions, they can tell him, there is no reason to object, this is a standard. The trial judge did help. The trial judge didn't say she was going to take and supply instructions for him or help him develop what instructions to give at all. So, I think, again, that's placing too much responsibility on the trial judge when the case law is clear. The trial judge had no such duty or responsibility. Improper cross-examination. For the, what we have is we have the prosecutor questioning the defendant's witness that he called, who was the mother of the victim. Basically, she did testify by giving permission. Then, cross-examination, so again, permission to do what? To discipline the children. Well, what they eventually got from her was what she perceived or what she now understood to be reasonable parental discipline. And she herself, on cross-examination, testified that slapping was not something that would be reasonable parental discipline, that would be spanking. And even on her redirect examination, the witness mother said that her belief as to the definition of corporal punishment would be, quote, like to spank, a spanking. I would consider a corporal punishment, end quote. This was at R232 and R233 of the record. Basically, the defendant's fiance or girlfriend, what she basically said was, yes, I gave permission to discipline, but what he did was not reasonable parental discipline. The fact that this was brought out, first of all, on cross-examination doesn't make the cross-examination improper. It's basically proper to take and establish what permission was given, not just a general thing like the defendant the ability to discipline. The question is, what did you anticipate that to be? And under the circumstances, this cross-examination was not improper. As far as closing argument is concerned, I take issue with the defendant's argument that the prosecutor said that he told the jury that because the defendant was not a parent that, therefore, reasonable parental discipline was out the window. I don't think that's what the prosecutor said. The defendant had argued or was arguing that he really didn't need permission, that it's legal for him to take and do just what he did. What the prosecutor's argument was, was the fact that, oh, wait a second, the law is different. The fact that the victim was not his daughter had a different standard. He needed to take and have the permission of the parent in order to reasonably discipline. Now, he didn't say that the defendant didn't have permission, but then what he did say is a slap to the girlfriend daughter's face, leaving a mark. Basically, doing that because he was mad was not reasonable discipline. The prosecutor never said that because he wasn't the parent, he couldn't discipline. He said that he needed permission, but even with that permission, what he did was not reasonable parental discipline. So the argument itself would suggest is not improper. The Facebook evidence, that was illicit to establish we have all of the evidence as to what the defendant refused to take and do, refused to put his hands behind his back, refused to talk to the police, refused to do anything at all. Then to take and claim that the police used excessive force, they tased me, they used a mace on me, and all this other kind of stuff as what the prosecution tried to take and do with the resisting obstruction was to provide a mental state of the defendant going into that to explain what is otherwise an inexplicable act. Why not just put your hands behind your back and get handcuffed because you're told you're being under arrest. You're being arrested because you refuse to take and speak and what they have is they have enough evidence at least to establish probable cause for a domestic battery. It's all part of the state's case to explain what all went on. And again, everything is exacerbated by the fact that when counsel talks about the lack of a foundation, etc., basically there's no objection. And I don't think that the trial judge, again, had any sui sponte duty to say, well, you know, Mr. Prosecutor, you really haven't laid a proper foundation. It's not the trial judge's duty to take and defend the defendant. And so in this case, we have this evidence coming in. I think it came in for a proper motive to explain I use the word motive or intent as to why he did what he did, why he refused to do. And I think the evidence is not more prejudicial than it is probative. I think it's very probative and to a very large degree, and I know this, it's not meant to take and slight anything at all, but any evidence that comes in against the defendant is prejudicial. Everything that they brought about with respect to what Cody Traxler said, to what the victim said, to what the mother of the victim, what she did during the course of all this, how she tried to close the obstructing as well. All of this evidence is prejudicial to the defendant. So I don't think that in this situation, the evidence was properly admitted and it was relevant. In terms of the properly admitted, he did not object to anything, didn't demand that there be a foundation, but if we were to look at it from the standpoint of whether or not it is error to admit this, there was nothing other than testimony that there was this posting on the officer's safety board regarding something that he had put on a Facebook page. Do you think that that is enough foundation to admit evidence of that nature? If there was an error in the admission of this, that goes to how it was admitted, do you think that there's enough foundation to establish that it's reliable? The testimony, from what I can recall, indicated it was on the board, but it also indicated that it came from the defendant's Facebook page. Now, I, much like counsel, probably more so than counsel, know absolutely very little about Facebook. I don't do use it, I don't, I don't know very little about it, so I don't know the inner workings, but from what was said, if somebody else who you friend can get on your page and post something, of course, I don't know how it appears, so I can't tell you, but if it came from somebody else that has somebody else's name on there or whatever their handle is or whatever you call it, I have absolutely no idea. When you talk about, even if we take what was said and say, well, we obviously established that it came from his page, it was on his page, how else would you be able to take and prove that it was not posted by somebody else? It's like trying to take and prove an infinitum negative. And I don't know how to go about doing that, and of course, part of that is my lack of knowledge of the inner workings of Facebook. So I think that there was an adequate enough of a basis here to admit this as evidence in this case. If that responds to your question. Time. Thank you. With respect to counsel's suggestion, your Honor's consideration, certainly if your Honor's would ask the parties for additional briefing as to that question, I would be happy to The trial judge is not an attorney on behalf of the defendant. There's no question. He's absolutely correct about that. There's also no question that when an individual decides to proceed pro se, he takes on responsibilities and cannot rely on the judge to represent him. At the same time, whether it's a pro se defendant or a defendant represented by counsel, the judge has to ensure that the individual receives a fair trial, has some responsibility for ensuring that both sides receive a fair trial, can't simply sit back and do nothing where clear error is presenting itself. With respect to the jury instructions, again, I think unfortunately the judge here to some degree misled this defendant because she said I'm going to help you out. The instructions come from the judge and the state always submits the instructions. Even in cases involving defense counsel, we often see the judge, after the parties go through the state's instruction, asking defense counsel, counsel, do you have any instructions to submit? She didn't ask that here. Clearly the defendant was misled. Now, the state says, well, this jury in the exercise of common sense could have decided it was reasonable discipline. That's kind of dicey because it's really, I think, jury nullification if they're not getting an instruction on it. Beyond that, as I've said, the prosecutor misstated it. Counsel downplayed that a little bit, but in closing argument the prosecutor very clearly said that he was not this child's parent. The defendant was not this child's parent and therefore he could not claim the defense of criminal discipline. And what's the jury to do at that point? This is the only instruction, to the extent they're instructed at all, this is the only instruction they receive from the prosecutor. No, that defense doesn't exist here because he's not the parent. They have no basis to counter that. So they could not, in the exercise of common sense, say he has this defense. They were instructed as to the elements of the offense. Again, those elements were easily proved. They had no option but to find him guilty of that charge. The counsel also says that the girlfriend distinguished between slapping and spanking, and this has been discussed in the briefs. The defendant disagreed. She did use as an example spanking, but she never said, oh, spanking would be okay, but slapping would not be okay. The prosecutor asked her, well, you understand now, don't you, that what he did was not okay? And she said, yes, that's what I've been told. Well, apparently she was told that by the prosecution. She's not a legal expert. He's almost presenting testimony to the prosecutor in bringing this out, and I think that was completely improper. With respect to the second issue, the counsel argues that it was adequately established that this information came from the defendant's Facebook page. No witness called by the state testified that he or she actually saw this information on the defendant's Facebook page,   just that this was posted at the police station, allegedly having come from the defendant's Facebook page, and the state has to lay a foundation to submit evidence. The counsel also argues that there was relevance here with respect to his mental state. I think this was a credibility question. The police officers testified that they tried to handcuff him, and they didn't say that he struck out or hit them or anything, but that he tensed up or something and refused to easily allow them to do that. He himself did not testify. His girlfriend testified, but the officers were bullying, and at one point they stepped on him in kind of a police brutality type thing. There was a straight credibility as to whether or not he committed the offenses of resisting or obstructing. This evidence as to motivation was completely unnecessary, and just incredibly prejudicial, even without the somewhat recent state of police shootings, but especially considering that, to attribute a statement to the defendant, those officers were shot in this incident, and it's too bad that even more officers weren't shot and killed. Just an abhorrent view would be deemed to be abhorrent by just about anybody. Incredibly prejudicial, and so even if there is some relevance, I doubt that, but even if your honors feel there's some relevance, I think clearly the prejudice here would far outweigh that. Thank you. The last thing we mentioned is that counsel a couple of times said that the defendant left a mark. I think there was testimony from the girl that her face was red for a short period of time. It was not a lasting mark, and so I think the evidence, had the jury been given the instruction, I think it was, again, a plausible defense, a reasonable option for the jury, was this discipline, was this battery, but they were never given the opportunity to make that decision, and so for all these reasons, Mr. Grom, I respectfully ask your honors to remit for a new trial. I have one question. I'm not inviting supplemental briefing, but are you aware of any case law that would consider it prosecutorial misconduct to offer evidence that is arguably very inadmissible when the opposing party is pro se? In other words, I have a hard time placing the blame on the trial judge based on this record, because she was very kind and compassionate towards this defendant. It's the prosecution that put her in that position by making these arguments and offering this Facebook evidence. Any case law saying, I mean, we know closing arguments can be plain error based on prosecutorial misconduct. Sure. Any case law in this situation? Well, I mean, I look at it as akin to almost other crimes type of evidence. I mean, it's certainly not a crime to espouse an abhorrent view, but I think it's similar to that. So what I'm worried about is happening here is the prosecutor recognizes he doesn't have an attorney, and it's prosecutorial overkill, and maybe unnecessarily. I would agree with Your Honor, and I don't know of a specific case. I think I did say, either in the brief or the reply brief, it's speculation of course, on my part, that had the defendant been represented by counsel, I don't know that the prosecution would have elicited that evidence and certainly if they had, I think there would have been a quick objection from practically any licensed defense counsel. But I don't know of any case. Okay, so as far as you know, prosecutorial misconduct so far has been limited to closing arguments. To my knowledge, that's true, although certainly there's case law saying all evidence presented was admitted, should not have been admitted, and it denied the defendant a fair trial, or the prejudice outweighed the probative value, so it should not have come in. What I'm really concerned about is should this evidence have ever been offered by a prosecutor representing the people? I believe it was so inflammatory that it was prosecutorial overreaching. Again, my guess, complete speculation is that had there been a defense attorney that maybe the prosecutor would not have gone so far, maybe he was taking advantage of the pro se defendant. But I think this was so inflammatory that it was improper for many reasons. Relevance, inflammatory, no firm evidence that actually came from the defendant for all of those reasons. Other crimes, evidence, potential hearsay, all reasons that the evidence could have been excluded and perhaps should not have even been offered. I agree with you on that. I agree. Thank you, Your Honors. Thank you, Mr. Fisher. Thank you both for your arguments here today. We will take the matter under advisement. We will confer with Justice McDade regarding the issue of the